Vincent NASTRO, Plaintiff

v.

Arthur M. D'ONOFRIO, Carolyn D'Ono-
frio, Arthur A. D'Onofrio, Paul
D'Onofrio, Nicole D'Onofrio, U.S. Pro-
peller Service of CT, Inc., New Eng-
land Propeller Service of CT, Inc.,
DIV–ACQ, Inc., ADMW, LLC, the
Chana Trust, the Continental Trust
Company, Limited, Kleban and Sa-
mor, P.C., & Elliot I. Miller, Defen-
dants

No. 3:02CV857 (DJS).

United States District Court,
D. Connecticut.

May 16, 2003.

Edwin L. Doernberger, Bradford J. Sullivan, Rebecca L. Fox, Saxe, Doernberger & Vita, PC, Hamden, CT, for Vincent Nastro, plaintiff.

Scott M. Karsten, Nicole D. Dorman, Sack, Spector & Karsten, West Hartford, CT, for Arthur M. D'Onofrio, Carolyn D'Onofrio, Arthur A. D'Onofrio, Paul D'Onofrio, Nicole D'Onofrio, New England Propeller SVC, Inc, U.S. Propeller SVC of CT, Inc, DIV–ACQ, Inc, ADMW, LLC, defendants.

James M. Sconzo, Halloran & Sage, Hartford, CT, Thomas P. O'Dea, Jr., Brett Michael Szczesny, Halloran & Sage, Westport, CT, for Kleban & Samor, P.C., Elliot I. Miller, defendants.

## MEMORANDUM OF DECISION AND ORDER

SQUATRITO, District Judge.

Plaintiff, Vincent Nastro ("Nastro"), has brought this lawsuit against the above-named defendants seeking injunctive relief pursuant to the Connecticut's enactment of the Uniform Fraudulent Transfer Act ("UFTA"), Conn. Gen.Stat. §§ 52–552a–5521 (West Supp.2002), and damages under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. §§ 42–110a *et seq.* For the reasons set forth herein, defendants' motions to dismiss are granted in part and denied in part. This action will go forward despite the lack of personal jurisdiction over certain defendants, and Nastro's motion for a preliminary injunction is granted.

### I. BACKGROUND

This lawsuit concerns Nastro's efforts to enforce a judgment against Arthur M. D'Onofrio ("D'Onofrio") by way of attachment of D'Onofrio's assets. Nastro commenced an action in 1996 in the Superior Court of California, County of San Joaquin, seeking dissolution of U.S. Propeller Service of California, Inc., which Nastro owned with D'Onofrio. On June 7, 2001, Nastro obtained a judgment against D'Onofrio from the Superior Court of California, San Joaquin County in the amount of $514,698.75 in compensatory damages and $1,600,000.00 in punitive damages for D'Onofrio's misappropriation of the corporation's funds. On April 1, 2003, the Court of Appeal for the State of California, Third Appellate District, affirmed the trial court's award of compensatory damages but reversed and remanded for a new trial with respect to the award of punitive damages. According to California law, post-judgment interest has been accruing and

continues to accrue on the amount of compensatory damages at the rate of ten percent per year from the date of the award.

On May 17, 2002, plaintiff filed this action and submitted an application for order to show cause why a preliminary injunction should not issue. (*See* Dkt. # 6). In the First Count of his complaint, plaintiff seeks avoidance of D'Onofrio's transfer of approximately $650,000.00 worth of stock in the following Connecticut based companies ("the Connecticut companies"): (1) the New England Propeller Service of CT, Inc., 1515 shares representing 100% ownership interest; (2) U.S. Propeller of CT, Inc., 100 shares representing 100% ownership interest; (3) DIV–ACQ, Inc., 50 shares representing 100% ownership interest; (4) ADMW, LLC, a 50% membership interest. On June 21, 2001, D'Onofrio transferred these stock certificates to the Continental Trust Company Limited ("trustee"), which is located in Jersey, Channel Islands,[1] for the purpose of establishing The Chana Trust for the benefit of Carolyn, Arthur A., Paul, and Nicole D'Onofrio ("beneficiaries"), who are D'Onofrio's wife and children. This trust is an irrevocable spendthrift trust, which prohibits the trustee from appointing or paying any money to D'Onofrio or his creditors. (*See* Dkt. # 39 at 7). Nastro alleges that the transfer of stock to the trustee was made without consideration to D'Onofrio, and the transfer left D'Onofrio without sufficient funds to satisfy Nastro's California judgment. Nastro seeks interim relief pending final resolution of this claim. In the Second Count Nastro seeks to hold D'Onofrio and his wife Carolyn liable under CUTPA for allegedly fraudu-

lent transfers of real and personal property to her name. The Third Count alleges that Elliot I. Miller, Esq. ("Miller") and Kleban & Samor, P.C. ("the firm") participated in the alleged fraudulent transfer of the Connecticut companies' stock to The Chana Trust, and the Fourth Count alleges that these actions violated CUTPA.

Per an order to show cause, a status conference regarding plaintiff's motion for a preliminary injunction was held before the undersigned on June 24, 2002. Thereafter, D'Onofrio, the beneficiaries, and the Connecticut companies filed a motion to dismiss the complaint on July 15, 2002. (*See* Dkt. # 16). Miller and the firm filed their own motion to dismiss on August 5, 2002. (*See* Dkt. # 22).

Once these motions had been briefed, a status conference was held on October 4, 2002. In their papers, defendants argued, *inter alia*, that this action should be dismissed because the court cannot acquire personal jurisdiction over the trustee, which defendants claim is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. As a result of this status conference, the court provided leave for Nastro to serve The Chana Trust and the trustee.

Nastro accomplished service of The Chana Trust and the trustee (*see* dkt. # s 32, 33, & 34), but neither the trustee nor the trust responded to the complaint. Plaintiff then filed a motion for default against the Chana Trust and the trustee, which the court granted on November 22, 2002. D'Onofrio, the beneficiaries, and the Connecticut companies filed a renewed motion to dismiss the complaint on No-

---

1. Jersey is one of the Channel Islands, which are located south of Great Britain and west of France in the Bay of Mont. St. Michel. It is part of the British Isles, but is not part of the United Kingdom: "Jersey is self-governing in internal matters, but the UK Government is responsible for defence, overseas representation and international affairs generally." Government of Jersey, *The Official Website for the Government of Jersey, at http://www.gov.je/* (last visited May 8, 2003).

vember 25, 2002 (*see* dkt. # 39) and a motion to reconsider the entry of default on November 27, 2002 (*see* dkt. # 41).

A conference was held before the undersigned on December 12, 2002 regarding "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed.R.Civ.P. 19(b). At this conference, the court ordered the parties to submit memoranda of law and any additional evidence with respect to the issue of personal jurisdiction over the trustee. The parties have submitted additional materials per the court's order.

## II. DISCUSSION

Nastro seeks interim relief in the form of a preliminary injunction. Defendants claim that this action should be dismissed in its entirety pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure because the court cannot acquire personal jurisdiction over the trustee, thereby rendering the trustee indispensable as that term is used in Rule 19(b) of the Federal Rules of Civil Procedure.

Resolution of the pending motions requires several layers of analysis. First, is the trustee a "necessary" party under Rule 19(a)? Second, can the court exercise personal jurisdiction over the trustee? Third, should the trustee be regarded as "indispensable" under Rule 19(b)? Fourth, has Nastro set forth a cause of action against Arthur and Carolyn D'Onofrio under CUT-PA? Fifth, has Nastro stated a claim upon which relief may be granted against Miller and the firm? Finally, is Nastro entitled to preliminary injunctive relief?.

**2.** The trustee is the real party in interest. Title to any property comprising the trust

## A. NECESSITY

The trustee is a necessary party as that term is used in Rule 19(a). With respect to determining whether a party is necessary, Rule 19 provides the following:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a). In an action to set aside a fraudulent conveyance, the transferee[2] of the assets at issue is a necessary party to the lawsuit because the action to set aside the allegedly fraudulent transfer necessarily impacts the transferee's interest in the property the transferee received. *See* Conn. Gen.Stat. § 52–552h(a)(2); 37 Am.Jur.2d *Fraudulent Conveyances and Transfers*, § 188 at 665 (2001) ("The fraudulent grantee is a necessary party defendant in an action to set aside a conveyance as fraudulent, since he has an interest in the subject matter of the suit which should not be affected by a decree unless he has been given the right to be heard."). The trustee, as the transferee in the allegedly fraudulent transaction, is therefore a necessary party under Rule 19(a).

corpus is vested in the trustee.

## B. PERSONAL JURISDICTION

Having determined that the trustee is a necessary party, the court must determine whether the trustee is subject to the personal jurisdiction of this court. In deciding whether personal jurisdiction is proper at this juncture in the litigation, the Court of Appeals for the Second Circuit has stated the following:

> [i]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.... If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials. Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion.

*Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981); *see Visual Sciences, Inc. v. Integrated Communications Inc.,* 660 F.2d 56, 58 (2d Cir.1981) ("In the absence of a full-blown hearing on the merits, plaintiff need make only a prima facie showing that the court has jurisdiction under a long-arm statute."). "A prima facie showing of jurisdiction will not suffice, however, where a plaintiff seeks preliminary injunctive relief." *Visual Sciences, Inc.,* 660 F.2d at 59. "A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him" so, "[w]here a challenge to jurisdiction is interposed on an application for a preliminary injunction '[t]he plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.'" *Id.* (citations omitted); *see In re Rationis Enterprises, Inc. of Panama,* 261 F.3d 264, 269 (2d Cir.2001) ("[A] federal court may issue a preliminary injunction pending its determination of a substantial question of federal jurisdiction of the action.... But substantial probability that the court will find a basis for federal jurisdiction ... is a crucial element necessary to justify the issuance of an injunction pendente lite,") (quoting *A.H. Bull S.S. Co. v. Nat'l Marine Engineers' Beneficial Ass'n,* 250 F.2d 332, 337 (2d Cir.1957)).

A federal court exercising diversity jurisdiction must determine in personam jurisdiction over each defendant pursuant to the law of the forum state. *See Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963); *Bross Util. Serv. Corp. v. Aboubshait,* 489 F.Supp. 1366, 1370 (D.Conn.1980), *aff'd,* 646 F.2d 559 (2d Cir.1980). This requires a two-step analysis. *See Mozes v. Welch,* 638 F.Supp. 215, 222 (D.Conn.1986) (citing *Arrowsmith,* 320 F.2d at 223); *Conn. Artcraft Corp. v. Smith,* 574 F.Supp. 626, 629 (D.Conn.1983). First, the plaintiff has the burden of showing that the state's long arm statute authorizes the exercise of personal jurisdiction. *Mozes,* 638 F.Supp. at 222–23. If the defendant is subject to jurisdiction under the terms of the applicable long-arm statute, then the court must also consider whether the exercise of jurisdiction satisfies due process, namely whether the defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit [in that forum] does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*

*Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Even though the trustee has been served with process, the exercise of personal jurisdiction over the trustee is not constitutional.[3] The U.S. Supreme Court's decision in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) dictates this result. In *Hanson,* the Supreme Court was faced with conflicting state court judgments regarding the appointment of the remainder of a trust. The settlor of the trust, who lived in Pennsylvania and then Florida, created a trust consisting of securities and named a corporation located in Delaware as the trustee. *See id.* at 238, 78 S.Ct. 1228. Some time thereafter, the settlor appointed a portion of the trust corpus to be dispersed upon her death to two other trusts for the benefit of her daughter and grandchildren, both with Delaware companies serving as trustees. *See id.* at 239, 78 S.Ct. 1228. The settlor's will bequeathed the residue of her estate to trusts for the benefit of Denckla and Stewart. *See id.* at 240, 78 S.Ct. 1228. Upon the settlor's death, the executrix of her will, Hanson, dispersed the disputed portion of the original trust remainder to the Delaware company trustees for the benefit of the settlor's daughter and grandchildren. *See id.* at 240, 78 S.Ct. 1228.

Denckla and Stewart commenced an action in Florida challenging the validity of the original settlor's appointment of the trust remainder. *See id.* at 240, 78 S.Ct. 1228. The Delaware company trustees, who now held title to the property in question, were not served as defendants. *See id.* at 241, 78 S.Ct. 1228. The Florida court ruled that the appointment was invalid, but dismissed the suit as to the Delaware company trustees because of a lack of personal jurisdiction. *See id.* at 242, 78 S.Ct. 1228. The Florida Supreme Court reversed the dismissal and held that, because the lower court had jurisdiction to construe the settlor's will, the lower court also had jurisdiction over the absent defendants and trust property. *See id.* at 242–43, 78 S.Ct. 1228.

Subsequent to the commencement of the Florida action, Hanson brought an action in Delaware seeking a declaratory judgment stating that the settlor's appointment was valid. *See id.* at 242, 78 S.Ct. 1228. The Delaware court ruled that the settlor's appointment was valid, and the Delaware Supreme Court affirmed this decision. *See id.* The Delaware Supreme Court also held that the Florida judgment to the contrary did not bind the Delaware lower court under the Full Faith and Credit Clause of the U.S. Constitution because the Florida court did not have jurisdiction over the Delaware company trustees or the trust property. *See id.* at 243, 78 S.Ct. 1228.

The Supreme Court held that the Florida court's exercise of jurisdiction over the Delaware trusts as well as the trust property violated due process. *See id.* at 254–55, 78 S.Ct. 1228. The Supreme Court first held that exercising jurisdiction by way of quasi-in rem jurisdiction over the securities was not possible because the property was not located in Florida:

> Since a State is forbidden to enter a judgment attempting to bind a person over whom it has no jurisdiction, it has even less right to enter a judgment pur-

---

**3.** Defendants argue that Nastro may not avail himself of Connecticut's long-arm statute, *see* Conn. Gen.Stat. § 33–929(f), because he is not a resident of Connecticut. Because the exercise of personal jurisdiction over the trustee is clearly not constitutional irrespective of whether Nastro is entitled to rely on the long-arm statute, the court does not reach this question.

porting to extinguish the interest of such a person in property over which the court has no jurisdiction.

*Id.* at 250, 78 S.Ct. 1228.

Second, the Supreme Court held that the Florida court could not exercise personal jurisdiction over the Delaware company trustees under the Fourteenth Amendment. *See id.* at 254, 78 S.Ct. 1228. The Supreme Court noted that the only contact the trustee had with Florida were "several bits of trust administration" initiated by the settlor, and the settlor's exercise of her power of appointment at issue. *Id.* at 252, 78 S.Ct. 1228. With respect to the sufficiency of this showing, the Supreme Court stated the following:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. The settlor's execution in Florida of her power of appointment cannot remedy the absence of such an act in this case.

*Id.* at 253, 78 S.Ct. 1228.

■ This court cannot exercise quasi-in rem jurisdiction over the stock certificates located in Jersey or personal jurisdiction over the trustee. According to Connecticut's enactment of the Uniform Commercial Code ("UCC"), when, as here, the security is "certificated," *see* Conn. Gen. Stat. § 42a–8–102(a)(4), the situs of the certificated security is the place where the certificate is located. *See* Conn. Gen.Stat. § 42a–8–112(a).[4] Even though the companies and, presumably, the companies' assets are located in Connecticut, the certificates evidencing ownership of the shares of the Connecticut companies are located in Jersey. As such, exercising quasi-in rem jurisdiction[5] over the shares is impossible.

■ There is also no basis to exercise personal jurisdiction over the trustee in Connecticut. As in *Hanson*, the trustee's relationship to Connecticut arises out of D'Onofrio's unilateral act of settling a trust. The Supreme Court has expressly held in *Hanson* that the unilateral act of another is not sufficient to satisfy due process. Further, the fact that the stock owned by the trustee evidences ownership of the Connecticut corporations is insufficient, standing alone, to meet the *International Shoe* test for satisfying due process. Because the record does not indicate any other basis to exercise jurisdiction over the trustee, the court must conclude that the trustee is not subject to personal jurisdiction in Connecticut and must dismiss all claims directed to the trustee from the complaint. Therefore, D'Onofrio's motion to dismiss the trustee and the trust is

---

4. Nastro argues that the situs of the shares should be the state of the corporation's incorporation, which is Connecticut in this case. However, the cases he cites for this proposition either pre-date the UCC or apply Delaware law, which expressly rejects the UCC's rule regarding the situs of shares. *See* 10 *Fletcher Cyclopedia of Private Corporations* § 4760.10, at 75 (Perm. Ed.2001).

5. The Supreme Court's analysis of quasi-in rem jurisdiction has evolved since *Hanson, see Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (holding that quasi-in rem jurisdiction may not be employed to compel the appearance of the owner of the property where the exercise of personal jurisdiction over the owner would violate due process), but not in a manner that affects this analysis.

**GRANTED.** Defendants' motion for reconsideration (dkt.# 41) is **GRANTED**, the entry of default against The Chana Trust and the Continental Trust Company Limited is **VACATED**, and Nastro's motion for default (dkt.# 36) is **DENIED**.

## C. INDISPENSABILITY

■ Having determined that the trustee is a necessary party, and that joinder of the trustee to this action is not possible, the court must determine whether the trustee is indispensable. Despite the fact that the trustee is a necessary party, the trustee is not indispensable within the context of Rule 19(b).

Rule 19(b) of the Federal Rules of Civil Procedure states that

> If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an

adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

D'Onofrio argues that, without the ability to exercise jurisdiction over the trustee, this court cannot possibly provide Nastro the remedy he requests because the trustee is in possession of the stock certificates. The certificates evidencing ownership in the Connecticut companies [6] are "certificated," *see* Conn. Gen.Stat. § 42a–8–102(a)(4), and, consequently, the UCC provides that "[t]he interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy, except as otherwise provided in subsection (d) of this section." Conn. Gen. Stat. § 42a–8–112(b); *see* Conn. Gen.Stat. § 52–289 ("[N]o attachment of shares of stock for which a certificate is outstanding shall be valid until such certificate is actually seized by the officer making the attachment, or is surrendered to the corporation which issued it."). Because the trustee has possession of the certificates in Jersey, D'Onofrio argues that the UCC precludes this court from taking any action against the certificates, thus preventing Nastro from obtaining the remedy he seeks.

■ Contrary to D'Onofrio's arguments, the court can provide Nastro a remedy without compelling the trustee to act. Although the UCC governs the rights of creditors vis-a-vis certificate holders in the usual case, it does not provide an exclusive list of all remedies available to defrauded parties:

---

**6.** The court notes that the trustee's interest in ADMW, LLC is not necessarily certificated. *See* Conn. Gen.Stat. § 34–170(b) (providing that a membership interest in an LLC "may be evidenced by a certificate of membership interest"). The parties have not provided any information about whether the membership interest at issue is manifested in a certificate,

or, if so, whether the interest is a security under the UCC, *see* Conn. Gen.Stat. § 42a–8–103(c). However, if the UCC does not apply to the membership interest in ADMW, LLC, then there is no apparent obstacle to the court ordering the LLC to recognize D'Onofrio as the true owner of the interest.

Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

Conn. Gen.Stat. § 42a–1–103; *see generally* Peter A. Alces, *The Law of Fraudulent Transactions*, § 5:20 at 5–25 (West 2002) ("So far as fraudulent disposition law is concerned, the UCC is not preemptive; fraudulent disposition law supplements the UCC."). Therefore, the fact that the UCC mandates that a court take action against stock certificates only within its jurisdiction, whether in the hands of the debtor, his representative, or the issuer, does not hamper the court's ability to issue new certificates as equitable relief from the perpetration of a fraud.

Because the certificates evidence ownership of Connecticut corporations, which have been named as defendants to this action, the court could order the corporations to delete the trustee as the owner of the stock in the corporate ledger and issue new certificates in favor of D'Onofrio. Under UFTA, a creditor may avail himself of the following remedies:

In an action for relief against a transfer or obligation under sections 52–552a to 52–552i, inclusive, a creditor, subject to the limitations in section 52–552i, may obtain: (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by chapter 903a; (3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property, (B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee, or (C) any other relief the circumstances may require.

Conn. Gen.Stat. § 52–552h (footnote omitted); 37 Am.Jur.2d *Fraudulent Conveyances and Transfers*, § 142 at 634 (2001) ("[A] creditor's remedy in a fraudulent conveyance action is limited to reaching the property that would have been available to satisfy the judgment had there been no conveyance."). "A grantor has an interest in property fraudulently conveyed which may be reached by attachment." *Olin Corp. v. Castells*, 180 Conn. 49, 52, 428 A.2d 319 (1980). UFTA gives the court broad authority to remedy fraud. The court has the ability to alter ownership of the stock through the corporation itself, and no provision of the UCC expressly repeals or supercedes the ability of the court to effect this transfer pursuant to UFTA. Therefore, it is not impossible for the court to provide Nastro a remedy.

Although the court has the ability to provide Nastro relief without enjoining the trustee, the trustee does, of course, have an interest in this litigation. However, the trust beneficiaries, who are also named as defendants to this action and whose interest in this litigation is identical to the trustee, could protect the trustee's interest. The trust beneficiaries are capable of, and, indeed, may be obliged to, assert any defenses the trustee may have to the fraudulent conveyance action, thereby mitigating any prejudice to the trustee. *See Associated Dry Goods Corp. v. Towers Financial Corp.*, 920 F.2d 1121, 1125 (1990)(stating that "we believe that 'the Rule 19(b) notion of equity and good conscience contemplates that the parties actu-

ally before the court are *obliged to pursue any avenues for eliminating the threat of prejudice,'*" (emphasis in original) (quoting 7 Charles Alan Wright, Arthur R. Wright, & Mary Kay Kane, *Federal Practice & Procedure* § 1608, at 112–13 (1986))).

Finally, "equity and good conscience" demand that his action go forward. D'Onofrio has transferred these certificates to an off-shore trust in Jersey, which is known as a haven for "asset protection" trusts, in an apparent effort to specifically thwart Nastro's efforts to collect a judgment. Courts have a responsibility to remedy wrongful conduct, and have, recently, cast a discerning eye at the substantiality of off-shore spendthrift trusts in order to find the proverbial "chink in the armor." *See, e.g., Lawrence v. Goldberg (In re Lawrence)*, 279 F.3d 1294 (11th Cir.2002) (affirming bankruptcy court's contempt citation against settlor of an off-shore spendthrift trust, which was created two months prior to the issuance of an arbitration judgment of $20.4 million against him, who refused to repatriate the trust assets to the bankruptcy estate despite retaining control over the trust); *Federal Trade Commission v. Affordable Media, LLC*, 179 F.3d 1228, 1238–44 (9th Cir.1999) (affirming district court's contempt citation against perpetrators of a fraud scheme who refused to repatriate assets held in an off-shore spendthrift trust on the grounds that the perpetrators retained enough control over the trust so that they could be ordered to repatriate the assets). Here, the presence of the Connecticut corporations before this court is a sufficient connection to allow the court to provide relief. *See generally* 12 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 3021, at 167 (2d ed. 1997) ("However, a court may compel action outside of its jurisdiction by its order with regard to persons and property within its jurisdic-

tion. 'Equity courts have known for a long time how to impose onerous alternatives at home to the performance of affirmative acts abroad as a means of getting those affirmative acts accomplished.'" (quoting *Kroese v. General Steel Castings Corp.*, 179 F.2d 760, 765 (3d Cir.1950))). The only impediment to providing Nastro a remedy is the abstract and dubious interest of the trustee, which can be adequately protected by other parties to this lawsuit with concurrent interests. *See Jaser v. New York Property Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir.1987) ("As an alternative to dismissal, a court should take a flexible approach when deciding what parties need to be present for a just resolution of the suit."). Therefore, the absence of the trustee does not necessitate dismissal of this action.

### D. CUTPA CLAIMS AGAINST ARTHUR AND CAROLYN D'ONOFRIO

Arthur and Carolyn D'Onofrio seek dismissal of the Second Court of Nastro's complaint, which alleges that they violated CUTPA when they allegedly transferred and changed ownership of several assets in an effort to avoid creditors. The motion to dismiss the Second Count is **DENIED**.

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Cooper v. Parsky*, 140 F.3d 433, 440 (2d

Cir.1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn. 1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993).

The complaint alleges the following facts germane to the D'Onofrios' motion. Nastro alleges that Arthur D'Onofrio "has used Carolyn D'Onofrio, his wife, as an alter ego in the conduct of his business." (Compl., ¶ 29). Further, Nastro alleges that Carolyn D'Onofrio participated in "the ownership and transfers of property in order to hinder, delay and defraud creditors" of her husband. (*Id.*, ¶ 30). Specifically, Nastro sets forth the following as specific examples of Carolyn D'Onofrio's aid to her husband in avoiding his creditors in addition to the creation of The Chana Trust: (1) Carolyn D'Onofrio's acceptance of ownership of Goodspeed Airport Development Corp., which was previously owned by D'Onofrio and remained under his control after the transfer, and acceptance of the proceeds of the sale of this entity; (2) Carolyn D'Onofrio's acceptance of ownership of 3 Lumberyard Road, East Haddam, Connecticut, which was owned by her husband, despite the presence of Nastro's judgment lien on the property. (*See id.*).

The D'Onofrios claim that Nastro cannot, as a matter of law, establish that they engaged in trade or commerce while committing the allegedly unscrupulous acts cited in the complaint. The D'Onofrios claim that the actions complained of amount to the transfer of property, and, because they are not in the business of selling or buying real estate, Nastro's allegations are insufficient to establish a nexus to trade or commerce.

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen.Stat. § 42–110(b). "Trade or commerce" is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen.Stat. § 42–110a(4). A person need not be a consumer to bring a CUTPA claim, *see Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 496, 656 A.2d 1009 (1995), and the Connecticut Supreme Court has repeatedly emphasized that it is not the type of relationship between the two parties but rather the defendant's actual conduct that is dispositive of whether the actions took place in the course of a trade or business, *see, e.g., Fink v. Golenbock*, 238 Conn. 183, 213–15, 680 A.2d 1243 (1996).

Nastro argues that the D'Onofrios' conduct is sufficiently related to the business of Arthur D'Onofrio's companies to establish the requisite relationship to trade or commerce. The court, for the purposes of deciding the instant motion, agrees. The D'Onofrios' actions must be considered in the proper context. The judgment Nastro obtained against Arthur D'Onofrio in California arises from Arthur D'Onofrio's and Nastro's common ownership of U.S. Propeller Service, Inc., and D'Onofrio's unscrupulous activities with respect to the assets of this corporation. The D'Onofrios' alleged "shell game" of

transferring stock certificates and real property located in Connecticut that could potentially satisfy Nastro's judgment could be deemed actions in furtherance of the original unfair trade practice litigated in California. Therefore, it is possible that Nastro could establish at trial the requisite connection to trade or commerce, and the D'Onofrios' motion to dismiss must be denied at this juncture in the proceedings.

### E. CLAIMS AGAINST MILLER AND THE FIRM

Miller and the firm seek dismissal of the Third Count and the Fourth Count of Nastro's complaint under Rule 12(b)(6).[7] The complaint alleges that Miller and the firm should be held liable for money damages under UFTA and CUTPA for participating in the fraudulent transfer of stock certificates to The Chana Trust by representing D'Onofrio in settling The Chana Trust. Miller and the firm's motion to dismiss the CUTPA claims against them is **GRANTED**.

■ As Nastro points out in his papers, the Connecticut Supreme Court has recently held that an attorney may not be liable under CUTPA even for intentional conduct provided that the attorney was representing his or her client:

It is of no consequence that the plaintiff in the present case is alleging intentional misconduct. By shielding attorneys from CUTPA liability for professional conduct, we do not intend to protect intentional malpractice, just as we never have intended to protect negligent malpractice. Rather, protecting professional conduct from CUTPA liability ensures that no attorney is discouraged from intentional and aggressive actions, believed to be in the interest of a client, by

fear of being held liable under CUTPA in the event that the action is later deemed to have been an intentional deviation from the standards of professional conduct.

*Suffield Development Associates Ltd. Partnership v. National Loan Investors, L.P.,* 260 Conn. 766, 784, 802 A.2d 44 (2002). Therefore, the Fourth Count must be dismissed.

■ The Third Count must also be dismissed. As Nastro candidly admits, there is no Connecticut authority confirming the validity of a cause of action against an attorney for aiding a fraudulent transfer. Further, to acknowledge this cause of action would be contrary to the Connecticut Supreme Court's reluctance to "impos[e] liability when such liability had the potential of interfering with the ethical obligations owed by an attorney to his or her client." *Krawczyk v. Stingle,* 208 Conn. 239, 246, 543 A.2d 733 (1988). In particular, with respect to liability under CUTPA, the Connecticut Supreme Court has stated that

[p]roviding a private cause of action under CUTPA to a supposedly aggrieved party for the actions of his or her opponent's attorney would stand the attorney-client relationship on its head and would compromise an attorney's duty of undivided loyalty to his or her client and thwart the exercise of the attorney's independent professional judgment on his or her client's behalf.

*Jackson v. R.G. Whipple, Inc.,* 225 Conn. 705, 727, 627 A.2d 374 (1993). Here, the conduct forming the basis of Nastro's claim amounts to nothing more, on its face, than the preparation of legal documents creating an off-shore spendthrift trust.

---

7. In accord with the standard of review previously set forth, the court has not considered the excerpt from Miller's deposition submit- ted with Miller and the firm's reply papers. *See* Fed.R.Civ.P. 12(b)(6).

The complaint does not allege that Miller and the firm did anything other than perform legal services for D'Onofrio, irrespective of any improper purpose D'Onofrio may have harbored. In light of the strong public policy of the State of Connecticut against imposing liability upon a lawyer to third parties for the performance of legal services to a client, Nastro has not stated a cause of action in the Third Count of the complaint.

## F. INJUNCTIVE RELIEF

Now that the court has determined that this lawsuit should go forward without the presence of the trustee, the court must turn to Nastro's motion for a preliminary injunction. As discussed herein, Nastro's motion for a preliminary injunction is **GRANTED**.

Nastro seeks an injunction against the Connecticut companies enjoining them from registering any further transfers of the stock held by the trustee and from further transferring any assets or funds to D'Onofrio, his family, the trust, or the trustee during the pendency of this litigation. As such, Nastro requests "[t]he typical preliminary injunction[,]" which "is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits." *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 34 (2d Cir.1995).

"The purpose of a preliminary injunction is to preserve the status quo between parties pending a final determination of the merits." *See Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 143 F.3d 688, 692 (2d Cir.1998). "In order to justify the award of a preliminary injunction, the moving party must establish two elements. First, the party must demonstrate that it will suffer irreparable harm in the absence of the requested relief." *Latino Officers Ass'n v. Safir*, 170 F.3d

167, 171 (2d Cir.1999). Second, there must be "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly towards the moving party." *Union Carbide Agric. Prod. Co. v. Costle*, 632 F.2d 1014, 1017 (2d Cir.1980), *cert. denied*, 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981).

Regarding the first component of the standard, "[t]o establish irreparable harm, plaintiffs must demonstrate 'an injury that is neither remote nor speculative, but actual and imminent.' ... The injury must be one requiring a remedy of more than mere money damages." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir.1989) (quoting *Consolidated Brands, Inc. v. Mondi*, 638 F.Supp. 152, 155 (E.D.N.Y.1986)). "However, a perhaps more accurate description of the circumstances that constitute irreparable harm is that where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Intern. Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir.1999).

Nastro has demonstrated that he will suffer irreparable harm in the absence of relief from this court. Nastro is attempting to collect on a money judgment rendered by the California Superior Court. D'Onofrio has admitted to owning no assets to satisfy this judgment. (*See* Dkt. # 9, Ex. A, at 81:1–3). As discussed herein, there is evidence suggesting that he transferred his interests in the Connecticut companies off-shore for the purpose of avoiding Nastro's judgment. If this court does not act to preserve the assets Nastro was able to locate, there is the possibility that D'Onofrio could take further steps to avoid Nastro's judgment. The possibility that D'Onofrio could take further action to

void Nastro's judgment, and could possibly dissipate his assets beyond the reach of this court, constitutes irreparable harm. *See In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir.1985) ("[F]ederal courts have found preliminary injunctions appropriate where it has been shown that the defendant 'intended to frustrate any judgment on the merits' by 'transfer[ring its assets] out of the jurisdiction.'" (quoting *Productos Carnic, S.A. v. Central American Beef & Seafood Trading Co.,* 621 F.2d 683, 686 (5th Cir.1980))).

Nastro has also met the second component of the standard for issuing a preliminary injunction. "This second 'serious questions' prong is also frequently termed the 'fair ground for litigation' standard." *Able v. U.S.,* 44 F.3d 128, 131 (2d Cir. 1995). Under the "serious questions analysis", the moving party need "not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt." *Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir.1985), *overruled on unrelated grounds, O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

Pursuant to the UFTA,

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Conn. Gen.Stat. § 52–552e(a). "[A] person wishing to avoid an alleged fraudulent conveyance has the burden of proving either constructive fraud or actual fraud." *Gaudio v. Gaudio,* 23 Conn.App. 287, 307, 580 A.2d 1212 (1990). "To prove constructive fraud, a plaintiff must show that the conveyance was made without substantial consideration and that the conveyance rendered the transferor unable to meet an obligation to the plaintiff." *Id.* "Actual fraud requires a showing that the conveyance was made with a fraudulent intent and that the transferee of the property participated in the fraud." *Id.* "In either instance, fraud must be proven by clear and convincing evidence." *Id.*

There is evidence in the record in support of Nastro's claim that D'Onofrio transferred his interest in the Connecticut companies without consideration and was thereby rendered insolvent. As previously noted, D'Onofrio testified that he has no assets to satisfy Nastro's judgment. (*See* Dkt. # 9, Ex. A, at 81:1–3). Also, according to Nastro's testimony and statement to the Internal Revenue Service ("IRS"), his transfer of his interest in the Connecticut companies to the trustee was without consideration and gratuitous. (*See* Dkt. # 9, Ex. A, at 26:18–20; *id.,* Ex. B, at 2). Further, D'Onofrio stated to the IRS that he transferred his interest in the Connecticut companies just fourteen days after the California Superior Court rendered judgment in Nastro's favor. (*See id.,* Ex. B, at 2). At the very least, Nastro has established a strong prima facie case of constructive fraud under the UFTA.

In light of these facts, Nastro has presented sufficiently serious questions re-

garding the merits of his claims to warrant a preliminary injunction to maintain the status quo pending the outcome of this litigation. Nastro has shown that he will suffer irreparable harm if this court does not preserve the status quo. Nastro has also shown that he can present sufficient evidence to show by clear and convincing evidence that D'Onofrio's actions were fraudulent. Therefore, a preliminary injunction shall issue forthwith, in the manner set forth below.

## III. CONCLUSION

For the reasons set forth herein, the court orders the following:

1. D'Onofrio's motions to dismiss (dkt. # s 16 & 39) are **GRANTED in part** and **DENIED in part**. Specifically, The Chana Trust and the Continental Trust Company Limited are **DISMISSED** for lack of personal jurisdiction.

2. Miller's and the firm's motion to dismiss (dkt.# 22) is **GRANTED**. The Third Count and the Fourth Count are **DISMISSED** for failure to state a claim upon which relief may be granted. There being no remaining causes of action directed against Kleban and Samor, P.C. and Elliot I. Miller, these parties are **DISMISSED**.

3. D'Onofrio's motion for reconsideration (dkt.# 41) is **GRANTED**, the entry of default against The Chana Trust and the Continental Trust Company Limited is **VACATED**, and Nastro's motion for default (dkt.# 36) is **DENIED**.

4. Nastro's motion for a preliminary injunction (dkt.# 6) is **GRANTED**. During the pendency of this lawsuit, unless further modified by this court:

a. U.S. PROPELLER SERVICE OF CT, INC., NEW ENGLAND PROPELLER SERVICE OF CT, INC., DIV–ACQ, INC., and ADMW, LLC shall not accept, register, or in any way acknowledge a transfer of ownership or claim of any interest of any kind whatsoever whether legal, beneficial or by way of a security interest, of the stock or other interest currently owned or held by the Continental Trust Company Limited for the benefit of Arthur M. D'Onofrio, for the benefit of any member of his family, or for the benefit of any other person or legal entity without express permission from this court.

b. U.S. PROPELLER SERVICE OF CT, INC., NEW ENGLAND PROPELLER SERVICE OF CT, INC., DIV–ACQ, INC., and ADMW, LLC shall not transfer any funds, assets, or interests of any kind whatsoever whether legal, beneficial or by way of a security interest to the Chana Trust; to the Continental Trust Company Limited; to Arthur M. D'Onofrio; to any member of his family; or for the benefit of Arthur M. D'Onofrio, for the benefit of any member of his family, or for the benefit of any other person or legal entity without express permission from this court.

c. Upon an inquiry to U.S. PROPELLER SERVICE OF CT, INC., NEW ENGLAND PROPELLER SERVICE OF CT, INC., DIV–ACQ, INC., or ADMW, LLC regarding the proposed purchase, acquisition, or assignment of any security or interest of any kind whatsoever whether legal, beneficial or by way of a security interest, in such entity currently held by the Continental Trust Company Limited, the entity shall advise the person making the inquiry of the following:

(i) That the security or interest in question is the subject of litigation in the United States District Court for the District of Connecticut in a lawsuit captioned *Nastro v. D'Onofrio*, 3:02CV857 (DJS);

(ii) That, as part of a judgment in this litigation, the court may find that the transfer of the securities by Arthur M.

D'Onofrio to the Continental Trust Company Limited is void; and

(iii) That any title to securities obtained from or through the Continental Trust Company Limited may be later deemed invalid or void.

This injunction shall be set forth in a separate order issued simultaneously with this memorandum of decision and order.

5. There being no issues triable to a jury, the parties shall contact the undersigned's chambers during the week of May 27, 2003 to schedule a court trial in this matter.

### ORDER

During the pendency of the above-captioned lawsuit, unless modified by order of this court:

a. U.S. PROPELLER SERVICE OF CT, INC., NEW ENGLAND PROPELLER SERVICE OF CT, INC., DIV–ACQ, INC., and ADMW, LLC shall not accept, register, or in any way acknowledge a transfer of ownership or claim of any interest of any kind whatsoever whether legal, beneficial or by way of a security interest, of the stock or other interest currently owned or held by the Continental Trust Company Limited for the benefit of Arthur M. D'Onofrio, for the benefit of any member of his family, or for the benefit of any other person or legal entity without express permission from this court.

b. U.S. PROPELLER SERVICE OF CT, INC., NEW ENGLAND PROPELLER SERVICE OF CT, INC., DIV–ACQ, INC., and ADMW, LLC shall not transfer any funds, assets, or interests of any kind whatsoever whether legal, beneficial or by way of a security interest to the Chana Trust; to the Continental Trust Company Limited; to Arthur M. D'Onofrio; to any member of his family; or for the benefit of Arthur M. D'Onofrio, for the benefit of any member of his family, or for the benefit of any other person or legal entity without express permission from this court.

c. Upon an inquiry to U.S. PROPELLER SERVICE OF CT, INC., NEW ENGLAND PROPELLER SERVICE OF CT, INC., DIV–ACQ, INC., or ADMW, LLC regarding the proposed purchase, acquisition, or assignment of any security or interest of any kind whatsoever whether legal, beneficial or by way of a security interest, in such entity currently held by the Continental Trust Company Limited, the entity shall advise the person making the inquiry of the following:

(i) That the security or interest in question is the subject of litigation in the United States District Court for the District of Connecticut in a lawsuit captioned *Nastro v. D'Onofrio,* 3:02CV857 (DJS);

(ii) That, as part of a judgment in this litigation, the court may find that the transfer of the securities by Arthur M. D'Onofrio to the Continental Trust Company Limited is void; and

(iii) That any title to securities obtained from or through the Continental Trust Company Limited may be later deemed invalid or void.

\* \* \* \* \* \*

Violation of any provision of this order could result in a finding of contempt, which could subject the person or entity to monetary sanctions, imprisonment, or any other measure necessary to protect the integrity of this order.

**IT IS FURTHER ORDERED** that plaintiff shall give notice of this order, by causing a copy of this order to be served upon the attorney(s) of each remaining party to this lawsuit, as well as the Continental Trust Company Limited, forthwith.