Faye MOZES, derivatively on Behalf of GENERAL ELECTRIC CO., Plaintiff,

v.

John F. WELCH, Jr., John F. Burlingame, Edward E. Hood, Lawrence A. Bossidy, Dennis D. Dammerman, Richard T. Baker, Lawrence E. Fouraker, Gertrude G. Michelson, Barbara Scott Prieskel, and Lewis T. Preston, Defendants,

and

General Electric Co., Nominal Defendant.

Civ. No. B–85–635(WWE).
MDL No. 654(WWE).

United States District Court,
D. Connecticut.

June 26, 1986.

Andrew B. Bowman, Westport, Conn., Eugene A. Spector, pro hac vice, Jay S. Cohen, pro hac vice, Gross & Sklar, P.C., Philadelphia, Pa., for plaintiff.

Robert B. Fiske, Jr., New York, N.Y., for defendants.

## RULING ON MOTION TO DISMISS

EGINTON, District Judge.

### FACTUAL BACKGROUND

This shareholder's derivative action follows the indictment and guilty plea of General Electric Corporation ("G.E.") to submitting to the United States Government approximately $800,000 in incorrect time and labor charges.[1]

In December of 1978 the Re-Entry Systems division of G.E. was awarded contracts by the Department of the Air Force for the production and delivery of re-entry vehicles for Minuteman missiles. Approximately seven years later, on March 26, 1985 G.E. and two of its former employees were indicted in the United States District Court for the Eastern District of Pennsylvania on charges arising out of those contracts. The indictment charged G.E. and the two former employees with 104 counts of making false statements to the Air Force and Defense Contract Audit Agency, and four counts of presenting false labor claims to the United States government. G.E. subsequently pled guilty to all counts against it.

Three days after G.E.'s indictment, on March 29, 1985, plaintiff's counsel wrote a demand letter to G.E.'s Board of Directors requesting that it take legal action against "those persons responsible for making, presenting and supervising false labor-cost claims to the government and making false statements to the Air Force and the Defense Contract Audit Agency." Additionally, the letter indicated that "legal action should be taken against the members of G.E.'s Audit Committee, including directors, for grossly negligently or purposely permitting such illegal acts."

On April 9, 1985 the general counsel for G.E., Walter A. Schlotterbeck, responded that the matter would be considered at a meeting of the G.E. Board, which meeting was to be held on April 23. On April 26 Schlotterbeck notified plaintiff's counsel that the Board had appointed a Special Litigation Committee to consider what legal action, if any, should be taken. He also informed plaintiff's counsel that he would notify him when the Special Litigation Committee had made its recommendation to the Board and the Board had acted thereon.

On May 21, following the guilty pleas entered by G.E., plaintiff's counsel wrote and asked for a "good-faith estimate of when the Special Litigation Committee would arrive at its recommendation." On May 29 Schlotterbeck responded by informing counsel that the Special Litigation Committee had retained the law firm of Shearman and Sterling as independent counsel and that although he was unable at that time to give an estimate of the date by which the Committee would report to the Board, as soon as independent counsel "ha[d] a better grasp of the scope of the problem and might be able to arrive at a time frame," plaintiff's counsel would be so advised.

On June 17 the plaintiff filed a shareholder's derivative action in the United States District Court for the Eastern District of Pennsylvania against the same present defendants, which complaint consisted of allegations substantially the same as those in the present action. On November 19 plaintiff voluntarily discontinued the suit in the Eastern District of Pennsylvania. The present lawsuit was instituted on November 22, 1985 and is considered a part of the multi-district litigation entitled *In re*

---

1. All facts set forth in this section are taken from the complaint and documents annexed thereto as filed in the above-entitled action.

*General Electric Securities Litigation,* Civil No. MDL–654(WWE).

On January 8, 1986 the defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (a) for failure to comply with Rule 23.1 of the Federal Rules of Civil Procedure and (b) for failure to present a justiciable controversy and (c) as to the outside director defendants pursuant to Rule 12(b)(2) for lack of personal jurisdiction. The plaintiff resists the motion and in response asserts; (a) that it is permissible for the plaintiff to make a demand and later claim that the demand has proven futile; (b) that any further demand is futile in the present case because the Board has failed to provide a definitive response to plaintiff's initial demand, although it had a reasonable time in which to do so; (c) that the claim for damages is timely and (d) that the court has jurisdiction over all G.E. directors.[2]

## DISCUSSION

The court finds that the most significant basis of the defendants' motion to dismiss is the claimed failure on the part of the plaintiff to comply with Fed.R.Civ.P. 23.1, which rule states in pertinent part:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

Although there is some authority to support the proposition that a plaintiff who makes a demand thereby waives any argument that demand is futile, *see Stotland v. GAF,* 469 A.2d 421 (Del.1983), the court will examine the plaintiff's claim of futility.

The policy underlying the demand requirement of Rule 23.1 is "to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs." *Brody v. Chemical Bank,* 517 F.2d 932, 934 (2d Cir.1975). *See also, Siegal v. Merrick,* 84 F.R.D. 106 (S.D. N.Y.1979). Indeed, since the seminal case of *Hawes v. Oakland,* 104 (14 Otto) U.S. 450, 26 L.Ed. 827 (1881) it has been well established that "before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity with his wishes." *Id.* 104 U.S. at 460–461. In other words, forcing shareholders to exhaust intracorporate remedies by making demand on directors allows the directors a chance to occupy their proper position as managers of the corporation's business, giving the corporation an opportunity to take control of a suit that will be brought on its behalf. In view of this principle, "[t]he federal courts should not ·interfere ... nor should they sanction the interference by shareholders with the duties of the board of directors unless it is clear that the board has no intention of taking the appropriate action itself." *Brooks v. American Export Industries, Inc.,* 68 F.R.D. 506, 510 (S.D.N.Y.1975).

▬ Hence, it is the mandate of Rule 23.1 that the shareholder must either make a demand on the board or plead with partic-

---

**2.** Although the plaintiff argues in her memorandum in opposition to the motion to dismiss that demand is futile in this case because the defendants have appointed a special litigation committee, thereby acknowledging that the Board is biased, and incapable of reaching an impartial decision, the court will not consider that contention in reaching its decision. Nowhere is it pleaded that the formation of the committee served to excuse demand. The court will not presume or infer this crucial requirement.

ularity the exceptional circumstances that demonstrate why a demand would be futile. In order that the court be able to determine whether a board has abdicated in favor of the corporate shareholders, by either refusing a demand or acting in such a manner as to make demand clearly futile, it must look solely to the complaint itself. *Elfenbein v. Gulf & Western Industries, Inc.*, 590 F.2d 445, 450 (2d Cir.1978); *Lewis v. Curtis*, 671 F.2d 779, 784 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). Further, the court is to consider whether the demand requirement was met on the facts that existed at the time the litigation was commenced. *Cramer v. General Telephone & Electronics Corporation*, 582 F.2d 259, 276 (3d Cir. 1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90.

### A) Was Demand Required?

■ In order to apply these principles the court turns to the allegations as set out in the complaint. The contentions which plaintiff would have the court accept in order that this case be "demand-excused" fall into several broad categories: 1) the director defendants have for many months been aware of the wrongs forming the basis for plaintiff's claims but have chosen not to protect GE or seek to recover amounts due to it and have refused to take action with respect to these claims because such action would require them to sue themselves, their friends and business associates; 2) the director defendants participated in, acquiesced in and approved the wrongs alleged in the complaint and have permitted the wrongs alleged and/or have remained inactive; thus, each of the director defendants has an irreconcilable conflict of interest in terms of the prosecution by virtue of participation in the mismanagement of GE; 3) almost eight months have passed since plaintiff's original demand letter and she has received no definitive reply. In response to this last claim, defendants countered that the eight month period does not constitute an adequate and reasonable amount of time under the circumstances of this case in which to respond to the demand. Defendants assert that the filing of the present lawsuit was therefore premature. The court will discuss each claim seriatim.

### 1) Failure to Take Action.

■ Conclusory allegations of director wrongdoing are not sufficient to excuse the demand requirements of Rule 23.1. *Kaster v. Modification Systems, Inc.*, 731 F.2d 1014, 1018 (2d Cir.1984). "A generalized claim that the Board failed to take action on the alleged wrongs set out in the demand letter as of the date of filing the complaint does not in any way explain *why* the Board is disabled from assuming control of the litigation." *Allison v. General Motors Corp.*, 604 F.Supp. 1106, 1113 (D.Del.1985). Plaintiff has not set out for the court any legally cognizable reason as to why the GE Board is unable to redress the alleged wrongs. The complaint does not evidence a refusal to act or any other concrete indication that the board had no intention of responding to the plaintiff's demand. Further, mere knowledge of wrongs and failure to immediately institute suit, without additional factors being present, are inadequate reasons for a plaintiff to assume the futility of demand. "...[B]ald charges of mere failure to take corrective action are ... inadequate to demonstrate futility." *Lewis v. Graves*, 701 F.2d 245, 249 (2d Cir.1983). See also, *Lewis v. Curtis*, 671 F.2d 779, 785 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982) ("... mere conclusory allegations of director wrongdoing will not suffice to excuse demand.").

■ Further, allegations that demand is futile because the directors "would be suing themselves" are also insufficient to excuse demand. See, e.g., *Lewis v. Graves*, 701 F.2d at 249. See also, *Lewis v. Curtis*, 671 F.2d at 785; *Heit v. Baird*, 567 F.2d 1157, 1162 (1st Cir.1977) ("To credit this argument, however, would be to permit an obvious bootstrap to relieve putative plaintiffs of their obligations under Rule 23.1."); *Allison*, 604 F.Supp. at 1115.

The court finds that the plaintiff has not met her burden of pleading with particularity why the alleged failure to take action would excuse demand in this case.

### 2) Participation, Acquiescence and Approval by Board in Alleged Wrongs.

█ It is the law in this circuit that "mere approval of an allegedly injurious corporate transaction, absent self-interest or bias by a *majority* of the board, is insufficient to excuse demand." *Lewis v. Graves,* 701 F.2d at 248 (emphasis added). See also, *Grossman v. Johnson,* 674 F.2d 115, 124 (1st Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982); *Lewis v. Curtis,* 671 F.2d at 785; *Greenspun v. Del E. Webb Corp.,* 634 F.2d 1204, 1210 (9th Cir.1980); *In re Kauffman Mutual Fund Actions,* 479 F.2d 257, 265 (1st Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). Nowhere in her pleadings has the plaintiff alleged that a majority of the Board participated in, acquiesced in or indeed in any manner was involved in alleged wrongdoings. Rather, she has named eight members of a seventeen member board and alleged in summary fashion that they were involved in the alleged wrongdoing, chose to look the other way, and would now be required to sue themselves and their friends as a result. Nowhere has she made sufficiently particular allegations of participation, self-dealing, bias, bad faith, corrupt motive or the like in reference to a board majority. She has alleged no facts from which the court could conclude that the majority of individual defendants have any interest adverse or antagonistic to GE. *See, Kaster,* 731 F.2d at 1017. In this regard, the deficiency in these pleadings merits no further discussion. The plaintiff will not be permitted to circumvent the particularity requirement of Rule 23.1 by omission. Accord, *Allison,* 604 F.Supp. at 1114.

### 3) Passage of Time Between Demand and Filing of the Complaint.

Plaintiff's final and critical contention is that the Board has demonstrated the futility of further demand by its failure to provide her with a definitive response to her initial demand letter. As noted above, the defendants counter that the plaintiff's suit is premature in that she has not allowed sufficient time for the Board to respond.

The present suit was filed on November 22, 1985, approximately eight months after the March 29, 1985 demand. The issue for the court is, therefore, whether the eight month interim was of sufficient duration for the Board to respond to the demand. If it was not, then the present suit is untimely.

> "There can be no precise rule as to how much time a Board must be given to respond to a demand. Indeed the question in premature filing cases is not how much time is needed to respond to the demand, but whether the time between the demand and filing of the suit was sufficient to permit the Board of Directors to discharge its duty to consider the demand. Generally, if demand is required, the amount of time needed for a response will vary in direct proportion to the complexity of technological, quantitative, and legal issues raised by the demand."

*Allison,* 604 F.Supp. at 1117–1118.

█ It is inherent in the nature of investigations that each must be considered as unique. In somewhat simple cases, the investigation may require a short period of time, whereas one having a more complex nature may take longer. The standard, then, by which the court must test the time limit in a particular situation is one of reasonableness under the circumstances. "[T]he corporation must function under a ... duty to make an earnest effort to consider the shareholder's demand and to decide upon a response within a reasonable time." *Mills v. Esmark,* 91 F.R.D. 70, 71 (N.D.Ill.1981) (court permitted 3 month delay). *Cf.* the following cases in which the courts approved the time periods noted: *Joy v. North,* 692 F.2d 880, 884 (2d Cir. 1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983) (nine month delay); *Gaines v. Haughton,* 645 F.2d 761,

767 (1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982) (fourteen month delay); *Byers v. Baxter,* 69 App. Div.2d 343, 419 N.Y.S.2d 497, 500 (1st Dept.1979) (special litigation committee conducted nine month investigation).

■ Applying these principles to the present case the court holds that the Board of Directors and the Special Litigation Committee formed by it were not afforded adequate time under the circumstances of this complex case to complete their investigation.

The plaintiff made a demand on the GE Board on March 29, 1985. She was informed by letter dated April 26, 1985, that a Special Litigation Committee had been formed to investigate the concerns of her demand. This communique also informed her that when the committee had made its recommendation to the Board and when the Board had acted upon that recommendation, she would be informed. On May 29, 1985, plaintiff was notified that the Special Litigation Committee had appointed the law firm of Shearman & Sterling as independent counsel to advise the Committee. Additionally, she was told that although an exact time frame in which the Committee would report to the Board could not then be predicted, as soon as independent counsel "had a better grasp of the scope of the problem" and was able to provide an opinion, she would be advised. In July of 1985, plaintiff commenced her original derivative suit in the United States District Court for the Eastern District of Pennsylvania against these identical defendants. In an affidavit dated October 9, 1985 submitted in support of a motion to dismiss that complaint, Walter B. Wriston, an outside director and chairperson of the Special Litigation Committee, advised the court and the plaintiff of the extensive scope of the Committee's investigation and the temporary impediments to that investigation caused by the ongoing grand jury investigation and criminal proceedings. He fur-

ther stated that the Committee anticipated rendering its final report two months after the completion of all criminal proceedings. The court is therefore puzzled by the plaintiff's assertion in her complaint, filed November 22 in this court, that the Board's posture is properly characterized as a "refus[al] to definitively respond." Given the enormity and complexity of the task before it the Board and its Special Committee responded with as much precision as was possible under the circumstances. Plaintiff's reliance on *Allison v. General Motors Corp., supra,* at 219, in which the court characterized a vague response as a "brush-off", is misplaced. The *Allison* court disapproved of a response in which the GM Board stated, "It is impossible, at this time, to fix a date for the conclusion to this inquiry; however, you may be assured that the Board is proceeding diligently and in an expeditious manner." This court is simply not faced with such amorphous language. Plaintiff was aware of the target date for the Special Litigation's report to the full GE Board before she commenced this litigation. The Special Committee's investigation was proceeding on a parallel course with a continuing grand jury inquiry as to the individuals responsible for the very conduct for which the plaintiff demanded that action be taken. The pendency of the grand jury proceedings impeded the speed of the Special Committee's progress in two respects. First, it inhibited Committee counsel's access to grand jury materials which the Committee believed might prove to be of assistance in its task. Second, interviews of GE employees, also believed to be imperative to the Committee's investigation, could not take place while the criminal proceedings were underway. Therefore, in order to not interfere with the criminal proceedings and in order to obtain full advantage [3] of what those proceedings revealed, the Committee had determined, and advised plaintiff of said determination, that the investigation could not be completed until approximately two

---

**3.** Just as the corporation often has resources superior to the individual shareholder with which to maintain litigation, it cannot be doubt-

ed that the federal government's investigative resources far surpassed those of the Special Litigation Committee.

months after the completion of all criminal proceedings.

Plaintiff argues that the grand jury proceedings "involved an investigation of individuals other than the instant defendants" and that "[t]he testimony and outcome of those proceedings therefore has no bearing on the liability of the defendants." This argument, however, is made with the clarity one gains with the proverbial twenty/twenty vision garnered from hindsight. Plaintiff's demand letter instructed the Board to take action against, *inter alia*, "those persons responsible for making, presenting and supervising false labor-cost claims to the government." It is therefore beyond cavil that the Special Litigation Committee should have awaited the final results of the government's investigations before issuing a final report and recommendation to the full Board in order to fully comply with plaintiff's demand. The court would be remiss in its duties if it did not encourage, indeed require, the Special Litigation Committee to conduct the most thorough investigation under the circumstances. Accord, *Auerbach v. Bennett*, 47 N.Y.2d 619, 419 N.Y.S.2d 920, 419 N.Y.S.2d 920, 929 (1979).

For the foregoing reasons the court finds that by applying conventional Rule 23.1 analysis demand was not excused. Plaintiff's failure to satisfy the demand requirement of Rule 23.1 requires that the complaint be dismissed for failure to satisfy a condition precedent to suit. Because the allegations as set out in the complaint do not warrant a finding that demand would be futile, *a fortiori* the present lawsuit was filed prematurely. By so doing the plaintiff has frustrated the policy and practical advantages favoring exhaustion of intracorporate remedies embodied in Rule 23.1.

The complaint is hereby DISMISSED WITH LEAVE TO REPLEAD BY AUGUST 31, 1986. If no amended complaint, consistent with this opinion, is forthcoming by that date the clerk of the court is directed to enter judgment. *Elfenbein v. Gulf & Western Industries, Inc.*, 590 F.2d at 450.

("Such an order would safeguard the interest of all the litigants. . . .").

It is therefore unnecessary at this time to reach any of the other grounds raised in the defendants' motion, save one. In the interests of judicial economy the court now turns to the issue of personal jurisdiction.

*B) Is The Court Competent to Exercise Personal Jurisdiction Over the Outside Director Defendants?*

The defendants have moved to dismiss the complaint as to Richard T. Baker, Lawrence E. Fouraker, Gertrude G. Michelson, Barbara Scott Prieskel, and Lewis T. Preston (the "Outside Director defendants") on the basis that the court lacks personal jurisdiction over them. The plaintiff resists the motion by alleging that the court has personal jurisdiction over the Outside Director defendants pursuant to Connecticut's long-arm statute, Conn.Gen.Stat. Section 52–59b, which she interprets as giving a Connecticut court jurisdiction over nonresident directors as long as the corporation on whose Board they sit has its headquarters in Connecticut. Thus, she contends, because the corporate headquarters of GE are based in Fairfield, Connecticut, this court may exercise jurisdiction over them. For the reasons set forth below, the court disagrees with her reasoning and accordingly declines to exercise personal jurisdiction over the nonresident outside directors.

It is a well settled principle that before a federal court sitting in diversity can properly exercise personal jurisdiction over a nonresident defendant the court must make two separate inquiries. Initially, it must determine whether the state's long arm statute authorizes the exercise of such jurisdiction. See, e.g., *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2d Cir.1963) (en banc); *Connecticut Artcraft Corp. v. Smith*, 574 F.Supp. 626, 629 (D.Conn.1983). Second, the court must then determine if the state statute satisfies due process. To satisfy this inquiry the state statute must provide for "certain minimum contact with [the forum state] such

that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). *See also, Connecticut Artcraft Corp. v. Smith,* 574 F.Supp. at 626.

The plaintiff has the burden of proof in establishing personal jurisdiction. *See, e.g., Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir.1984); *Lombard Bros., Inc., v. General Asset Management Co.,* 190 Conn. 245, 250, 460 A.2d 481 (1983). Further, "[a] federal court adjudicating a case founded upon diversity of citizenship must determine the question of *in personam* jurisdiction by reference to the law of the forum state." *Bross Utilities Service Corp. v. Aboubshait,* 489 F.Supp. 1366, 1370 (D.Conn.1980), *aff'd,* 646 F.2d 559 (2d Cir.1981). *See also, Arrowsmith v. United Press International,* 320 F.2d at 223; *Connecticut Artcraft Corp.,* 574 F.Supp. at 629. Connecticut's long-arm statute is found in Connecticut General Statutes at Section 52–59b.[4]

The basis of jurisdiction alleged by the plaintiff is Section 52–59b(a)(1) which extends jurisdiction over an individual who "transacts any business in the state". She interprets this section of the statute as giving the court jurisdiction over nonresident directors because "a director of a corporation transacts business in the state where his corporation has its principal place of business." Her contention is submitted bereft of supporting case law and the court in its own research has failed to uncover any. The initial question, then, with respect to the outside directors is whether they have "transacted business" in Connecticut within the meaning of the long-arm statute.

The Connecticut General Statutes do not define what the phrase "transacts any business" means within the context of Section 52–59b. However, because the Connecticut long-arm statute was based upon Section 302(a) of the New York Civil Practice Law and Rules, Connecticut courts have looked to New York law in interpreting the statute. *Bross Utilities Service Corp. v. Aboubshait,* 489 F.Supp. 1366, 1374 n. 39 (1980); *Gandolfo v. Alford,* 31 Conn.Supp. 417, 424, 333 A.2d 65 (1975). An examination of New York law demonstrates that in order to obtain in personam jurisdiction over the outside director defendants, the relevant consideration is their own personal contacts with the forum state. In other words, jurisdiction over a corporate director does not automatically emanate from jurisdiction over the corporation itself. Personal jurisdiction must be denied where the contact with the forum state is based solely on allegations of symbiotic relationship rather than individual contacts. *See, e.g., Green v. McCall,* 710 F.2d 29, 30 (2d Cir.1983) (Conn.Gen.Stat. does not confer personal jurisdiction over the commissioners of the United States Parole Commission in their individual capacities); *Laufer v. Ostrow,* 55 N.Y.2d 305, 313, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982) (New York long-arm statute construed to mean that individual who engaged in corporate business activity in New York on behalf of corporate employer was not personally subject to jurisdiction even though activities created jurisdiction over employer); *Sheldon v. Kimberly-Clark Corp.,* 105 A.D.2d 273, 482 N.Y.S.2d 867, 869 (2d Dept.1984) (fiduciary shield doctrine protects out of state corporate officers from jurisdiction of New York courts unless the officer was acting in own interest rather than on behalf of the corporation); *Living Window ICC, Inc. v. Ward,* Civil No. B–945 (D.Conn. April 24, 1974) ("Neither Fed.R.Civ.P. 4(f) nor 4(e) support a claim of jurisdiction with respect to [indi-

---

**4.** Section 52–59b provides in pertinent part:
  (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership, or his or its executor or administrator, who in person or through an agent: (1) Transacts any business within the state.

vidual defendant], since he transacted business only on behalf of [corporation]. See, Conn.Gen.Stat. 52–59(b)."): *Platt Corp. v. Platt,* 17 N.Y.2d 234, 270 N.Y.S.2d 408, 217 N.E.2d 134 (1966) (mere fact that defendant director of New York corporation or corporation headquartered in New York not sufficient basis for in personam jurisdiction without personal contacts). The only contacts which the plaintiff alleges that the outside director defendants have had with Connecticut are those stemming from their official capacity as directors of the corporation. The court holds that such allegations are not supportive of jurisdiction under Conn.Gen.Stat. Section 52–59b.

Because the court has found jurisdiction lacking based on the permissible boundaries of Connecticut's long-arm statute it is ordinarily not necessary to inquire into the second prong of federal jurisdiction, the due process clause. In this case, however, it merits mention that it is doubtful that the jurisdiction would be constitutionally permissible, in any event.

The Due Process clause is essentially one of fundamental fairness. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). Further, as noted earlier in this opinion, due process requires that each defendant's contacts with the forum state be assessed individually in determining whether jurisdiction exists. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 1482 n. 13, 79 L.Ed.2d 790 (1984). The court finds that it would be unforseeable and fundamentally unfair for these outside director defendants to be haled into court in Connecticut. They certainly have not "purposely avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

The motion to dismiss as to the outside director defendants is, accordingly, granted.

### CONCLUSION

It has been held that this is a demand-required case, that plaintiff did not comply with the demand requirements of Fed.R. Civ.P. 23.1, and that the filing of her lawsuit was premature. Further, the court declined to exercise personal jurisdiction over the outside director defendants and the motion to dismiss as to them is GRANTED WITH PREJUDICE. Plaintiff may not reassert that the court has jurisdiction over them should she choose to replead after she has followed the mandate of this opinion. The motion to dismiss the remaining portions of the complaint is GRANTED WITH LEAVE TO REPLEAD BY AUGUST 31, 1986.

SO ORDERED.