MEMORANDUM OF DECISION
 

 SQUATRITO, District Judge.
 

 Plaintiff, American Wholesalers Underwriting, LTD. (“AWUL”), brings this action against defendant, American Wholesale Insurance Group (“AWIG”), based upon Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), Connecticut common law, and the Connecticut Unfair Trade Practices Act (“CUTPA”), Conn. GemStat. §§ 42-110a
 
 et seq.
 
 Defendant has filed a motion to dismiss (dkt.# 13) the complaint for lack of personal jurisdiction. For the reasons set forth herein, defendant’s motion is GRANTED in that the court finds that exercising personal jurisdiction over AWIG in the District of Connecticut is improper, but DENIED inasmuch as defendant seeks dismissal of this action.
 
 *CCXCII
 
 This case shall be transferred to the Western District of North Carolina.
 

 I. FACTS
 

 AWUL is a Connecticut corporation with its principal place of business located in Stamford, Connecticut, where it engages in the business of rendering insurance services. AWIG is a North Carolina corporation with its principal place of business located in Charlotte, North Carolina, and also engages in the business of rendering insurance services. AWUL maintains a web site with the domain name <http://www.wipwins.com>. AWIG maintains a web site with the domain name <http://www.amwins.com>.
 

 AWUL began providing insurance services under its trade names of “American Wholesalers Underwriting” and “American Wholesalers” in 1994. AWUL alleges that these trade names have been recognized by the consuming public and the insurance industry as belonging to AWUL. AWUL registered the name “American Wholesalers Underwriting, Inc.” with the United States Patent and Trademark Office on September 12, 1995. AWUL further contends that it registered the acronym “WIP” on August 27, 1996, and the name “Wholesale Insurance Plan” on April 21, 1998. AWUL has alleged that AWIG’s use of the names “American Wholesale Insurance Group” and “American Wholesale” are confusingly similar to AWUL’s recognized trade names and its registered trademark. AWUL also claims that AWIG’s domain name creates confusion between the names and corporate identities of the parties. AWUL contends that it used the trade names “American Wholesalers Underwriting” and “American Wholesalers” and maintained its web site at <http://www.wipwins.com> “long before” AWIG began to use its “confusingly similar” trade names and domain name.
 

 AWUL alleges that AWIG solicits and regularly transacts business within the State of Connecticut. AWIG holds numerous fully owned subsidiaries, two of which are connected to the State of Connecticut. New Century Global (“NCG”), a Delaware corporation fully owned by AWIG, holds two subsidiaries within the State of Connecticut: New Century Global of New England (“NCG-NE”), and Lambert Green, Ltd. (“LG”). NCG-NE has an office in Farmington, Connecticut, which has seven (7) employees and accounted for 1.3% of AWIG’s profits in the year 2002. LG is a Connecticut corporation, but has only two employees, both of whom are located in Virginia.
 

 AWIG’s web site has a map indicating its business locations. Upon visiting the web site, the court observed a box numbered five (5) covering the area of Connecticut as well as parts of Massachusetts, New York, and Rhode Island. Clicking this link brings the user to information regarding the AWIG subsidiary NCG. The NCG information lists an address and telephone number in New York, and an email address for further information.
 

 Plaintiff has alleged that the Farming-ton, Connecticut address and telephone number for NCG-NE can be found at <http://www.amwins.com>. Upon accessing the web site on October 6, 2003 and November 18, 2003, this court was unable to find any reference to NCG-NE, nor was it able to find an address or phone number for the Farmington, Connecticut office. The Court was also unable to find a link to the NCG web site while navigating <http://www.amwins.com>. Because the existence of the address and phone number, as well as the link to the NCG web site, are not determinative of the court’s assertion of jurisdiction, the court will credit the allegations made by the plaintiff
 
 *CCXCIII
 
 in its consideration of the pending motion.
 
 [1]
 

 AWIG has placed a minimum of six (6) magazine advertisements within national trade publications. Each of these magazines has between 1,000 and 2,000 subscribers within the State of Connecticut, which represents between 1% and 2.5% of each magazine’s total national subscriptions. Each of these advertisements contain “American Wholesale Insurance Group”, “<www.amwins.com>”, and “New Century Global”. AWIG also allegedly advertised its insurance products on the web site <http://www.programbusiness.com>.
 

 II. DISCUSSION
 

 AWUL sets forth three counts in its Complaint. Defendant seeks dismissal of all counts of the Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.
 

 A. STANDARD OF REVIEW
 

 Under Rule 12(b)(2), an action should be dismissed if the court lacks jurisdiction over a party. Fed.R.Civ.P. 12(b)(2). When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant.
 
 Robinson v. Overseas Military Sales Corp.,
 
 21 F.3d 502, 507 (2d Cir.1994). Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction and by making a
 
 prima facie
 
 case of jurisdiction.
 
 Ball v. Metallurgie Hoboken-Overpelt, S.A.,
 
 902 F.2d 194, 197 (2d Cir.1990). In contrast, when an evi-dentiary hearing is held, the plaintiff must demonstrate the court’s personal jurisdiction over the defendants by a preponder-anee of the evidence.
 
 Robinson,
 
 21 F.3d at 507 n. 3. In a case where, as here, the parties have conducted extensive discovery regarding the defendants’ contacts with the forum state, but no evidentiary hearing has been held, “the plaintiffs
 
 prima facie
 
 showing, necessary to defeat a jurisdiction testing motion, must include an averment of the facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.”
 
 Ball,
 
 902 F.2d at 197;
 
 see also Bensusan Restaurant Corp. v. King,
 
 937 F.Supp. 295, 298 (S.D.N.Y.1996) (“[mjatters outside the pleadings ... may ... be considered in resolving a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2) without converting it into [a motion] for summary judgment”). When considering a Rule 12(b)(2) motion, the court construes any factual averments and resolves all doubts in the plaintiffs favor.
 
 CutCo Indus., Inc. v. Naughton,
 
 806 F.2d 361, 365 (2d Cir.1986).
 

 “In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state’s personal jurisdiction rules ‘if the federal statute does not specifically provide for national service of process.’ ”
 
 PDK Labs, Inc. v. Friedlander,
 
 103 F.3d 1105, 1108 (2d Cir.1997) (quoting
 
 Mareno v. Rowe,
 
 910 F.2d 1043, 1046 (2d Cir.1990)). Because the Lanham Act does not authorize nationwide service of process,
 
 see, e.g., Tomra of North America, Inc. v. Environmental Products Corp.,
 
 4 F.Supp.2d 90, 92 (D.Conn.1998), the court must determine
 
 in personam
 
 jurisdiction over each defendant pursuant to the law of the forum state.
 
 See Arrowsmith v. United Press Int’l,
 
 320 F.2d 219, 223 (2d Cir.1963). This
 
 *CCXCIV
 
 requires a two-step analysis.
 
 See Mozes v. Welch,
 
 638 F.Supp. 215, 222 (D.Conn.1986) (citing
 
 Arrowsmith,
 
 320 F.2d at 223);
 
 Conn. Artcraft Corp. v. Smith,
 
 574 F.Supp. 626, 629 (D.Conn.1983). First, the plaintiff has the burden of showing that the state’s long-arm statute authorizes the exercise of personal jurisdiction.
 
 Mozes,
 
 638 F.Supp. at 222-23. If the defendant is subject to jurisdiction under the terms of the applicable long-arm statute, then the court must also consider whether the exercise of jurisdiction satisfies due process, namely whether the defendants have “certain minimum contacts with [the forum state] such that the maintenance of the suit [in that forum] does not offend ‘traditional notions of fair play and substantial justice.’ ”
 
 Int’l Shoe Co. v. State of Washington,
 
 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
 

 B. LONG-ARM STATUTE
 

 AWIG is not a resident of Connecticut, so plaintiff must show that defendant is subject to personal jurisdiction pursuant to Section 33-929 of the Connecticut General Statutes, which is Connecticut’s long-arm statute applicable to foreign corporations. Section 33 — 929(f)
 
 [2]
 
 provides, in pertinent part, the following:
 

 Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: ... (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; ... or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.
 

 Conn. GemStat. § 33-929(f). The Connecticut Supreme Court has interpreted this provision to
 

 requir[e] inquiry not only into the various elements of the plaintiffs cause of action, spelled out in the various sub-parts of subsection [ (f) ], but also into the totality of contacts which the defendant may have with the forum.... Under subsection [ (f) ], consistent with the constitutional demands of due process, it is the totality of the defendant’s conduct and connection with this state that must be considered, on a case by case basis, to determine whether the defendant could reasonably have anticipated being haled into court here.
 

 Lombard Bros., Inc. v. General Asset Management Co.,
 
 190 Conn. 245, 254-55, 460 A.2d 481 (1983).
 
 [3]
 

 Plaintiff claims that exercising personal jurisdiction is authorized under subsections (f)(2) and (f)(4) of the long-arm statute. For the reasons set forth herein,
 
 *CCXCV
 
 neither subsection authorizes the exercise of personal jurisdiction over defendant.
 

 1. SUBSECTION (f)(4)
 

 AWIG has not committed a tort within the State of Connecticut, and is therefore not subject to personal jurisdiction pursuant to Section 33 — 929(f)(4). AWUL contends that the court has personal jurisdiction over AWIG because AWIG committed the tort of trademark infringement in Connecticut. Trademark infringement can be a “tort” for the purpose of determining long-arm jurisdiction, but the infringement must be the act of selling products that infringe upon the plaintiffs trademark, and the infringement must take place in the forum state.
 
 On-Line Technologies v. Perkin Elmer Corp.,
 
 141 F.Supp.2d 246, 264 (D.Conn.2001). Plaintiff claims that the infringement occurred in the State of Connecticut because Connecticut is the place where “the passing off has occurred.” (Dkt.# SO). “In trademark infringement and unfair competition cases, a claim is said to arise ... “where the passing off occurs, i.e., where the deceived customer buys the defendant’s product in the belief that he is buying the plaintiffs.’”
 
 G.F.C. Fashions, Ltd. v. Goody’s Family Clothing,
 
 No. 97 Civ. 0730, 1998 WL 78292, at *2 (S.D.N.Y. Feb. 20, 1998) (quoting
 
 Vanity Fair Mills, Inc. v. T. Eaton Co.,
 
 234 F.2d 633, 639 (2d Cir.),
 
 cert. denied,
 
 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956));
 
 see Premier Herbs, Inc. v. Nature’s Way Products,
 
 689 F.Supp. 180, 184 (S.D.N.Y.1988). While plaintiff has identified the proper standard, plaintiff has the burden of producing evidence that this passing off in fact occurred in Connecticut. The plaintiffs burden of showing where a passing off occurs is low, requiring only “an offering for sale of even one copy of an infringing product in [the state], even if no sale results.”
 
 Bensusan Restaurant Corporation,
 
 937 F.Supp. at 299;
 
 see Editorial Musical Latino Americana, S.A. v. Mar Int’l Records, Inc.,
 
 829 F.Supp. 62, 64 (S.D.N.Y.1993);
 
 German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co.,
 
 569 F.Supp. 1529, 1532 (S.D.N.Y.1983).
 

 Plaintiff has alleged that the “passing off’ of the insurance product has taken place in the State of Connecticut, yet, with the aid of discovery, has been unable to show this court evidence of a single AWIG customer located within the State of Connecticut. Nor has AWUL provided evidence that any potential or directly targeted AWIG customers are located in Connecticut. Absent this showing, this court cannot conclude that any “passing off’ has occurred in Connecticut. As such, the court does not have specific jurisdiction over defendant because plaintiff has not produced sufficient evidence to claim that the tort of trademark infringement may have occurred within the State of Connecticut.
 

 Plaintiff has alternatively suggested that the court may have specific jurisdiction over the defendant because AWUL is a Connecticut company that has been injured by the defendant’s alleged trademark infringement. Plaintiff cites authority for the proposition that, because the injury is felt in Connecticut, the tort should be deemed to have been committed in Connecticut. This argument ignores the language of Section § 33 — 929(f)(4), which provides the following: “Every foreign corporation shall be subject to suit in this state ... on any cause of action arising ... out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.” Conn. Gen.Stat. § 33 — 929(f)(4). The construction of this provision advocated by plaintiff has been rejected by other courts in the District of Connecticut, and is also rejected by
 
 *CCXCVI
 
 this court.
 
 See Southern New England Distributing Corp. v. Berkeley Finance Corp.,
 
 30 F.R.D. 43, 47 (D.Conn.1962) (“In the Connecticut statute, the emphasis is unmistakably upon the
 
 place where
 
 the tortious conduct occurred. It requires tor-tious conduct
 
 in this state.”); see also Bross Utilities Service Corp. v. Aboubshait,
 
 489 F.Supp. 1366, 1373 (D.Conn.1980).
 

 Plaintiff cites a decision of the Court of Appeals for the Seventh Circuit in support of its argument that the state where the tort injury is felt should have personal jurisdiction over the tortfeasor.
 
 See Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership,
 
 34 F.3d 410, 412 (7th Cir.1994). However, in that case, the plaintiffs, the Indianapolis Colts, by nature of operating a National Football League team in Indiana, primarily used their trademark in Indiana, and the Court of Appeals reasoned that the injury inflicted by defendant, the Baltimore CFL Colts, would be felt mainly in Indiana.
 
 Id.
 
 The Court of Appeals also noted that the defendant could be deemed to have “entered” Indiana by way of a national television broadcast of the defendant’s football games, and that this entry into Indiana itself would presumably cause injury to the plaintiff by confusing Indianapolis Colts fans located primarily in Indiana.
 
 Id.
 
 In the present action, plaintiff uses its trademark in interstate commerce generally, and does not, either purposefully or because of the very nature of the product offered, target any particular customer base in the State of Connecticut. Further, absent a factual showing of some kind of “entry” into Connecticut, or “passing off’ in Connecticut, similar to that presented in
 
 Indianapolis Colts, Inc.,
 
 this court cannot exercise personal jurisdiction over AWIG based upon Section 33-929(f)(4).
 

 2. SUBSECTION (f)(2)
 

 The Connecticut Supreme Court has interpreted Section 33-929 to permit the exercise of personal jurisdiction over a non-resident corporation under two theories. First, the court could find personal jurisdiction based upon a theory of specific jurisdiction, where, generally speaking the defendant purposefully directs certain enumerated activities at the forum state, and those activities actually caused the harm complained of.
 
 See Thomason v. Chemical Bank,
 
 234 Conn. 281, 288, 661 A.2d 595 (1995). Second, this court could exercise personal jurisdiction over a defendant under the theory of general jurisdiction, which under Section 33 — 929(f), means that “the defendant could reasonably have anticipated being hauled into court here
 
 some person who had been solicited
 
 in Connecticut and that the plaintiffs cause of action is not materially different from an action that might have resulted directly from that solicitation.”
 
 See id.
 
 at 296, 661 A.2d 595. This court would have personal jurisdiction over AWIG under Section 33-929(f)(2) if the facts support either theory and the exercise of jurisdiction is constitutionally permissible. Each theory is discussed in turn.
 

 i. SPECIFIC JURISDICTION
 

 This court cannot exercise personal jurisdiction pursuant to a specific jurisdiction theory over AWIG, because it lacks the contacts required by Section 33-929(f)(2). In order to apply subsection (f)(2) in the context of specific jurisdiction, the defendant’s acts of solicitation must arise out of the solicitation.
 
 See Thomason,
 
 234 Conn. at 292, 661 A.2d 595. Plaintiff argues that AWIG’s website, which is accessible to Connecticut Internet users at <www.amwins.com>, solicits business in the State of Connecticut. The AWIG website is not a basis to impose specific jurisdiction over AWIG. Exercis
 
 *CCXCVII
 
 ing personal jurisdiction by way of specific jurisdiction predicated upon the maintenance of a passive web site is not proper.
 
 See On-Line Technologies v. Perkin Elmer Corp.,
 
 141 F.Supp.2d 246, 265 (D.Conn.2001);
 
 Bensusan Restaurant Corp. v. King,
 
 937 F.Supp. at 295;
 
 E-Data Corp. v. Micropatent Corp.,
 
 989 F.Supp. 173 (D.Conn.1997). The AWIG web site requires a potential customer to initiate contact with AWIG by telephone, mail, or email, and customers cannot directly purchase any product through the web site. As such, the AWIG site is “passive,” and therefore personal jurisdiction does not lie on this basis.
 

 Second, the presence of AWIG subsidiaries in the State of Connecticut is not a basis for the exercise of personal jurisdiction over AWIG. AWUL submits that this court has specific jurisdiction over AWIG because AWIG has two subsidiaries with a presence within Connecticut, NCG-NE and LG. In order to establish jurisdiction based on the presence of a subsidiary, the parent corporation must fully control the subsidiary corporation such that the corporate veil must be pierced.
 
 Mountview Plaza Associates, Inc. v. World Wide Pet Supply, Inc.,
 
 76 Conn.App. 627, 633, 820 A.2d 1105 (2003);
 
 Hersey v. Lonrho,
 
 73 ConnApp. 78, 86, 807 A.2d 1009 (2002). However, assuming that this relationship does exist, plaintiff has been unable to fulfill its burden to produce evidence that either NCG-NE or LG has sold insurance under the name of “American Wholesale” within the State of Connecticut. AWUL has not even produced evidence that NCG or LG has sold any insurance product bearing the contested names “American Wholesalers”, “American Wholesalers Underwriting”, “Wholesale Insurance Plan”, or “WIP” in any state. Without such a showing, this court cannot assert
 
 in personam
 
 jurisdiction over the defendant under Section 33-929(f)(2), which, in the context of specific jurisdiction, requires some causal link between NCG-NE’s or LG’s activities in Connecticut and the harm complained of.
 

 ii. GENERAL JURISDICTION
 

 In order to exercise personal jurisdiction over AWIG under a theory of general jurisdiction, this court must be satisfied that the defendant has “certain minimum contacts with [the forum] such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ”
 
 International Shoe Co. v. Washington,
 
 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)(quoting
 
 Milliken v. Meyer,
 
 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). “Even when the cause of action does not arise out of or relate to the foreign corporation’s activities in the forum State, due process is not offended by a State’s subjecting the corporation to its
 
 in personam
 
 jurisdiction when there are sufficient contacts between the State and the foreign corporation.”
 
 Helicopteros Nacionales de Colombia, S.A. v. Hall,
 
 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Here, the court must determine whether AWIG has sufficient contacts with the State of Connecticut in order to apply general jurisdiction under Connecticut’s long-arm statute subject to the limitations imposed by the Due Process Clause of the Fourteenth Amendment.
 

 The Connecticut Supreme Court has recognized that “the [Connecticut] legislature did not intend to authorize Connecticut courts to exercise the full measure of ‘general’ jurisdiction that would have been constitutionally permissible.”
 
 Thomason v. Chemical Bank,
 
 234 Conn. 281, 293, 661 A.2d 595 (1995). The standard for exercising personal jurisdiction over a defendant on a general jurisdiction theory
 
 *CCXCVIII
 
 is that “the plaintiff need only demonstrate that the defendant could reasonably have anticipated being hauled into court here by
 
 some person who had been solicited
 
 in Connecticut and that the plaintiffs cause of action is not materially different from an action that might have resulted directly from that solicitation.”
 
 Id.
 
 at 296, 661 A.2d 595 (italics in original).
 

 AWIG has four sources of contact within the State of Connecticut: (1) magazine advertisements placed in national trade magazines that have between 1,000 and 2,000 subscribers each in the State of Connecticut; (2) one Internet advertisement on the trade web site <www.pro-grambusiness.com>; (3) two subsidiary corporations, NCG-NE and LG; and (4) an Internet web site accessible to Connecticut Internet users at <www.am-wins.eom>.
 

 Plaintiff has not shown that there is personal jurisdiction over defendant pursuant to a theory of general jurisdiction. Both AWUL and AWIG have identified
 
 Thomason v. Chemical Bank,
 
 234 Conn. 281, 661 A.2d 595 (1995), as illustrative of the standard for determining whether to exercise general jurisdiction under Section 33 — 929(f). In
 
 Thomason,
 
 the Connecticut Supreme Court reversed the trial court’s dismissal of the action for lack of personal jurisdiction over the defendant, and held that exercising personal jurisdiction over the defendant in Connecticut was appropriate under the long-arm statute.
 
 See id.
 
 at 285, 661 A.2d 595. In that case, the defendant, Citibank, had placed “advertisements in national publications, including Business Week, the New York Times and the Wall Street Journal ... [representing], inter alia, that the trustee bank was ‘number one for ... New York, New Jersey and
 
 Connecticut-’’’Id.
 
 at 284, 661 A.2d 595. Further, Citibank had engaged in “a substantial number of mortgage transactions in this state,” issued a substantial number of credit cards to customers in Connecticut, and included advertisements sent directly to Connecticut customers within credit card statements.
 
 Id
 
 at 284-85, 661 A.2d 595.
 

 The four sources of AWIG contact with the State of Connecticut identified by AWUL cannot be characterized as “ ‘affirmative measures designed to attract Connecticut’ customers in that they constitute the creation of ‘an organizational network that is likely to prompt a significant number of Connecticut’ residents to place business with the [defendant].”
 
 Id.
 
 at 298, 661 A.2d 595 (quoting
 
 Frazer v. McGowan,
 
 198 Conn. 243, 251-52, 502 A.2d 905 (1986)). Absent a showing by plaintiff that the nonresident defendants are likely to do significant business in Connecticut, the Connecticut long-arm statute as interpreted by the Connecticut Supreme Court would not permit the exercise of jurisdiction over defendant. As such, plaintiff fails to establish general jurisdiction over defendant in the State of Connecticut.
 

 Citing
 
 Thomason,
 
 AWUL claims that this court has jurisdiction over defendant based upon its Internet and magazine advertisements. However, in
 
 Thoma-son,
 
 the defendant placed advertisements in major national publications, including The New York Times, The Washington Post, and Business Week that specifically referenced the State of Connecticut. The defendant in
 
 Thomason
 
 also included advertisements within its Connecticut customers’ credit card statements. In this case, AWUL has alleged that AWIG advertised in trade magazines such as The Insurance Marketplace, Business Insurance, Insurance Journal, Rough Notes, and American Agent and Broker; and on one trade web site <www.programbusiness.com>. The advertisements in
 
 Thoma-son
 
 were placed in publications with a
 
 *CCXCIX
 
 more broad circulation and a far greater number of Connecticut subscriptions than the advertisements placed by AWIG here. Moreover, the
 
 Thomason
 
 advertisements specifically mentioned that the product was advantageous for Connecticut residents. In this case, there was no specific mention of the State of Connecticut within the advertisements, and, because the sub-scribership of each trade magazine in the State of Connecticut is less than 2,000, there is no evidence that AWIG specifically targeted Connecticut consumers. Without deliberate targeting, or at least a more substantial subscription base in Connecticut, there can be no purposeful availment of the laws of the State of Connecticut, and therefore long-arm jurisdiction cannot be proper.
 

 Plaintiff also claims that AWIG’s subsidiary contacts to Connecticut through NCG-NE and LG satisfies the long-arm statute. “Mere ownership by a parent corporation of a subsidiary corporation present in the forum state generally will not subject the parent to personal jurisdiction in that forum ... even when the separation between parent and subsidiary is ‘merely formal,’ as long as it is ‘real.’ ”
 
 Savage v. Scripto-Tokai Corp.,
 
 147 F.Supp.2d 86, 93 (D.Conn.2001). To acknowledge general jurisdiction based on AWIG’s subsidiary contacts, the court would need to pierce the corporate veil to conclude that, because NCG-NE and LG do business in Connecticut, AWIG does business here as well.
 

 The Connecticut Supreme Court has endorsed two approaches for determining the circumstances when the corporate form should be disregarded. The first is the “instrumentality” theory:
 

 The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of-its own; and (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiffs legal rights; and (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.
 

 Zaist v. Olson,
 
 154 Conn. 563, 575, 227 A.2d 552 (1967). “The instrumentality rule imposes individual liability for corporate actions upon a shareholder, director, or officer of a corporate entity that is, in economic reality, the instrumentality of the individual.”
 
 Campisano v. Nardi,
 
 212 Conn. 282, 291, 562 A.2d 1 (1989). Generally speaking, liability under the instrumentality approach is imposed where the corporate form is used to perpetrate some kind of wrongful act for the benefit of one who controls the corporation.
 
 See Zaist,
 
 154 Conn. at 578, 227 A.2d 552.
 

 Second, “[t]he identity rule primarily applies to prevent injustice in the situation where two corporate entities are, in reality, controlled as one enterprise because of the existence of common owners, officers, directors or shareholders and because of the lack of observance of corporate formalities between the two entities.”
 
 Angelo Tomasso, Inc. v. Armor Const. & Paving, Inc.,
 
 187 Conn. 544, 560, 447 A.2d 406 (1982). The Connecticut Supreme Court has defined the identity rule as follows:
 

 If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate
 
 *CCC
 
 identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.
 

 Angelo Tomasso, Inc.,
 
 187 Conn. at 554, 447 A.2d 406 (quoting
 
 Zaist,
 
 154 Conn. at 576, 227 A.2d 552). Generally speaking, the identity rule imposes liability when two corporations or a corporation and an individual should properly be considered one in the same.
 
 See Zaist,
 
 154 Conn. at 578, 227 A.2d 552.
 

 Plaintiff has not met its burden of demonstrating that defendant’s corporate form should be disregarded under either rule. Plaintiff does not offer any evidence that AWIG dominates or controls its subsidiaries. Rather, plaintiff offers no evidence beyond that which would be customary in a parent-subsidiary relationship. Moreover, the fact that NCG-NE and LG are both thrice removed subsidiaries of AWIG does not permit the inference that the subsidiaries were created by AWIG to allow an economic entity to escape liability.
 

 Plaintiffs offer with respect to defendant’s activities on the Internet does not satisfy the requirements of Section 33-929(f). The Connecticut long-arm statute may apply to corporations in a case where an Internet domain name or toll-free phone number was the source of the infringement.
 
 See e.g., Inset Systems, Inc. v. Instruction Set, Inc.,
 
 937 F.Supp. 161 (D.Conn.1996). In
 
 Inset Systems, Inc.,
 
 the court concluded that the defendant had minimum contacts based upon its Internet web address and toll-free telephone number that would subject it to general jurisdiction in Connecticut.
 
 Id.
 
 The court reasoned that because Internet advertisements reach up to 10,000 Connecticut users and are available continuously, the defendant had purposefully availed itself of the privilege of doing business within Connecticut through its Internet web site and toll-free phone number.
 
 Id. A
 
 distinguishing factor in the
 
 Inset Systems, Inc.
 
 decision, however, was that the infringing trademark itself was located within the defendant’s Internet domain name and the toll free phone number.
 
 Id.
 
 The court determined that general jurisdiction was proper because even a “passive” user of the web site would be subjected to an infringed trademark.
 

 The “passive” Internet user described in
 
 Inset Systems Inc.
 
 could not be deceived by the claimed infringement present on AWIG’s web site. A “passive” Internet user is one who can be deceived by an infringing trademark through accessing a web site without any additional action.
 
 Id.
 
 The passive Internet user or 1-800 caller could be deceived by the infringing mark in
 
 Inset Systems Inc.
 
 through dialing the phone number or typing the web address that directly included the infringed trademark. For general jurisdiction to apply based upon an Internet web site, a passive Connecticut Internet user must have been in danger of being deceived by the infringing trademark, which has not been shown to happen in this case. As such, general jurisdiction cannot attach for the web site alone without a showing of a deceived customer or potential customer as a result of the contents of the AWIG web site.
 

 Courts have declined to exercise personal jurisdiction over a defendant when a “Connecticut user must find defendant’s Web address, access it, view and browse the information.... ”
 
 E-Data Corporation,
 
 989 F.Supp. at 176. Since
 
 Inset Systems, Inc.,
 
 courts have been reluctant to find
 
 in personam
 
 jurisdiction based upon passive web sites because “upholding personal jurisdiction ... would, in effect, create national (or even worldwide) jurisdiction, so that every plaintiff could sue in plaintiffs
 
 *CCCI
 
 home court every out-of-state defendant who established an Internet web site.”
 
 The Hearst Corporation v. Ari Goldberger,
 
 No. 96 Civ. 3620, 1997 WL 97097, *20, 1997 U.S. Dist. LEXIS 2065, at *66 (S.D.N.Y. Feb. 26, 1997). “Creating a site, like placing a product into the stream of commerce, may be felt nationwide — or even worldwide — but, without more, it is not an act purposefully directed toward the forum state.”
 
 Edberg, Wardlaw, and IDEXX Laboratories, Inc. v. Neogen Corporation,
 
 17 F.Supp.2d 104, 114 (D.Conn.1998). In
 
 Neogen,
 
 the court concluded that the Web site was “similar to an advertisement in a national magazine or newspaper,” and distinguished its finding from that of
 
 Inset Systems Inc.
 
 by showing that, in
 
 Neogen,
 
 the web site itself was not “the source of the tortious conduct, i.e., the alleged infringement.”
 
 Id. Neogen
 
 suggests that
 
 Inset Systems Inc.
 
 actually addresses specific jurisdiction, and should not be applied to cases of general jurisdiction.
 

 Defendant’s Internet domain name does not infringe upon plaintiffs trademarks. The names
 
 “wipwins
 
 ” and
 
 “amwins
 
 ” are similar because each contains the term “wins”, which stands for “wholesale insurance”. AWUL has produced evidence that it registered “WIP”, which stands for ‘Wholesale Insurance Plan”, and not “wins.” The term “wins” is not a trademark that AWUL has claimed as its own, and this is the only similarity between the two domain names. Therefore, the AWIG domain name does not violate the AWUL trademark “WIP”. Because “amwins” does not contain an infringement of a registered trademark, as did the domain name in
 
 Inset Systems Inc.,
 
 there is a much weaker argument for
 
 in personam
 
 jurisdiction based upon this web site. AWIG’s web site does not directly target Connecticut consumers, and plaintiff has not produced evidence of any Connecticut consumer who was targeted or deceived by the web site. As such, general jurisdiction cannot be found.
 

 In considering defendant’s purported contacts within the State of Connecticut, plaintiff has fallen short of its burden to produce facts to satisfy a finding of general jurisdiction under Section 33 — 929(f) of the Connecticut General Statutes.
 

 III. CONCLUSION
 

 The plaintiff holds the burden of providing the court with evidence to clearly establish jurisdiction over defendant. In this case, plaintiff has had the opportunity, with the benefit of discovery, to present an adequate showing of
 
 in personam
 
 jurisdiction under a theory of either specific or general jurisdiction. Plaintiff has failed to show specific actions taken by the defendant within the State of Connecticut to provide specific jurisdiction. The plaintiff also has failed to show that the defendant has a significant number of contacts with Connecticut that could comport with traditional notions of fair play and substantial justice to allow general jurisdiction under the Connecticut long-arm statute.
 

 Although the court lacks personal jurisdiction over defendant, it need not dismiss the action: “[T]he Court’s lack of [personal] jurisdiction does not require dismissal of the action because 28 U.S.C. § 1406(a) permits transfer of an action commenced in the wrong judicial district to the proper district in the interests of justice.”
 
 Grill v. Walt Disney Co.,
 
 683 F.Supp. 66, 69 (S.D.N.Y.1988)(citing
 
 Goldlawr v. Heiman,
 
 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962));
 
 see also, e.g., Levy v. Pyramid Co. of Ithaca,
 
 871 F.2d 9, 10 (2d Cir.1989);
 
 United Computer Capital Corp. v. Secure Products, L.P. & Secure Products Corp.,
 
 218 F.Supp 2d 273, 279 (S.D.N.Y.2002). In this case, “transfer is appropriate because defendants have ac
 
 *CCCII
 
 tual notice of the litigation and therefore will not be prejudiced.”
 
 Grill,
 
 683 F.Supp. at 69. Furthermore, the court does not find that the defendant will suffer any prejudice if the action is transferred to North Carolina, as the record indicates that defendant AWIG is a resident of North Carolina.
 

 For the reasons set forth herein, defendant’s motion to dismiss (dkt.# 14) is GRANTED in part. The case is hereby TRANSFERRED to the Western District of North Carolina. The Clerk of the Court shall close this file.
 

 [1]
 

 . This underscores the importance of providing dated printouts, attached to an affidavit, if necessary, showing the information claimed to exist on a given web site so that the court can properly evaluate the evidence offered.
 

 [2]
 

 . Although the parties cite Section 33-929(e) in their memoranda, plaintiff does not explain how this provision applies to allow the exercise of jurisdiction over defendant. Specifically, plaintiff does not explain how defendant is ''transacting] business in this state in
 
 violation of section 33-920,”
 
 which is a prerequisite to applying Section 33-929(e). Conn. Gen.Stat. § 33-929(e) (emphasis added). Because the court cannot discern any, and the parties have not pointed out any, material difference between the outcome of this analysis under subsections (e) and (f), if subsection (e) were shown to be applicable, the court will discuss subsection (f) only.
 

 [3]
 

 . Section 33 — 929(0 was, until January 1, 1997, codified as Section 33-411(c). The text is identical.